**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-41472

ALAN D. RATLIFF,

Plaintiff-Appellant,

versus

CITY OF GAINESVILLE, TEXAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

July 17, 2001

Before WIENER and STEWART, Circuit Judges, and WALTER S. SMITH, JR.,[*] District Judge.

CARL E. STEWART, Circuit Judge:

Alan D. Ratliff ("Ratliff") appeals the trial court's jury instructions, as well as its decision to admit certain spoilation evidence, in an age discrimination lawsuit that he filed against the City of Gainesville, Texas ("the City" or "Gainesville"). For the following reasons, we affirm in part, and we reverse in part and remand for a new trial.

---

[*] District Judge of the Western District of Texas, sitting by designation.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

In November 1994, Gainesville hired a recruiting firm, Ralph Anderson & Associates ("RAA"), to conduct a search for a new city manager. David Eisenlohr ("Eisenlohr"), then president of RAA, met with Gainesville City Council ("the Council" or "City Council") members to question them regarding their needs for the position. Based on these interviews, but without needing the final approval of the City in order to run the advertisements or job listings, Eisenlohr compiled a written profile of the position. The pro file stated that the selectee must have: (1) a diverse general background in municipal management and experience as a city manager, city administrator, chief administrative officer, or an assistant city manager in a similar or larger community; (2) a bachelor's degree, but with preference for a master's degree; and (3) preferably, experience in a stand alone community, i.e., one that provides its own solid waste collection, landfill, water, wastewater treatment, airport, and cemetery. The profile, however, did not require an engineering degree.

An advertisement approved by the City stated that it sought an "up-and-coming, aggressive" leader with a bachelor's degree in public or business administration or a related field. It also stated that a master's degree was preferred, but it made no mention of an engineering degree requirement.

Gainesville's mayor, James Hatcher ("Hatcher"), and members of the City Council told Eisenlohr that the City was looking for a "younger person" who was "very aggressive, very high energy and was not there thinking in terms of putting down roots." Eisenlohr also testified that in a preliminary interview with Ratliff, Eisenlohr stated that although the entire City Council selected the final candidate, Hatcher "called the shots" on the Council. In addition, Eisenlohr stated to Ratliff that the City was "looking for someone who would not plan on staying there, would use it as a stepping stone."

2

Ratliff was 54-years-old in early 1995, the time at which he applied for the city manager position through RAA. Ratliff had neither an advanced nor an engineering degree. Ratliff, however, had 26 years of managerial experience in city government, including six years of experience as an assistant city manager of Plano, Texas, a small suburban town. He was also the city manager for Coppell, Texas ("Coppell"). The City contends that his experience in these cities did not qualify him for the position in Gainesville, given its view that those cities are not stand alone cities. Similarly, it put into evidence that Ratliff's tenure in Coppell was not without conflict and that he resigned his position as a result of pressure from Coppell's City Council.

Eisenlohr selected Ratliff as a finalist for the position, along with four younger finalists, all of whom were in their thirties. Larry Jackson ("Jackson"), a recommender of Ratliff and an acquaintance of Hatcher, testified that after he recommended Ratliff, Hatcher informed him that the City was looking for "a young man who would probably come in for a short time and move on." Each candidate was interviewed over a two-day period in February 1995 by the City Council, which included at least three individuals who were at least ten years or more older than Ratliff. The Council tape recorded and used certified agendas of the sessions, in accordance with Texas law. In March 1995, several of the City Council members lost their elected seats, and each of these individuals destroyed or discarded, upon immediate notice of their losses, all notes, correspondence, and memoranda related to the hiring process.[2]

The City ultimately rejected Ratliff and hired Alan Mueller ("Mueller") instead, a man in his early thirties with a master's degree and an engineering background. Mueller, however, had less

---

[2] One Council member, James Pulte, resigned for medical reasons and did not retain his notes and memoranda.

experience than Ratliff. Several council members indicated that Mueller's civil engineering background would be helpful to the City in its negotiations with contractors for several current and pending city projects.

After being notified of the City's hiring decision, Ratliff attempted to contact several City Council members. He succeeded in taping a portion of a conversation with Councilman Kenneth Kaden ("Kaden"), then Mayor Pro Tem,[3] who stated that he believed the only reason Ratliff was not hired was his age. Kaden, however, testified that he was simply attempting to mollify Ratliff and to end the conversation quickly since Kaden was busy at work. Kaden also stated in an affidavit that the Council liked neither Ratliff's personality nor demeanor during the interview, but that the council members were too polite to inform Ratliff of this.

Ratliff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 29, 1995, and after a two year investigation, the EEOC concluded that Gainesville had violated the Age Discrimination in Employment Act ("ADEA")[4] because "there was direct evidence that it was seeking a young man for the position who would come in for two (2) to three (3) years and move on to better things." A jury, however, subsequently found that the City had not violated the ADEA. Ratliff now appeals.[5]

---

[3] Kaden is Gainesville's current Mayor.

[4] The ADEA states that it is unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2001).

[5] The EEOC and the American Association of Retired Persons ("AARP") also filed amici briefs in support of Ratliff.

4

## DISCUSSION

I.     Jury Instructions

Ratliff argues that the trial court erred when it refused to charge the jury with the following inference instruction: "If the Plaintiff disproves the reasons offered by Defendants by a preponderance of the evidence, you may presume that the employer was motivated by age discrimination." This inference instruction would have allowed the jurors to infer discriminatory motive from Ratliff's prima facie case combined with proof that Gainesville's proffered reasons were pretextual. Similarly, Ratliff contends that the trial judge erred when it gave a "pretext plus" instruction to the jury, in lieu of "a permissive pretext only" standard. The trial judge instructed the jury, in part, with the following charge:

> If you find that the City of Gainesville has articulated nondiscriminatory reasons for not hiring Mr. Ratliff, then you must find for The City of Gainesville. However, if Mr. Ratliff can show that the articulated reasons given by The City of Gainesville are (1) false, and (2) a determining or motivating factor for his non-hire was his age, then you may find for Mr. Ratliff.

This Court reviews jury instructions for harmful error. Rubinstein v. Adm'r of Tulane Educ. Fund, 218 F.3d 392, 404 (5th Cir. 2000), reh'g en banc denied, 232 F.3d 212, cert. denied, 121 S. Ct. 1393 (2001). "Even if an instruction erroneously states the applicable law or provides insufficient guidance, this Court will not disturb the judgment unless the error could have affected the outcome of the trial." Id. However, "[c]hallenges to jury instructions are reviewed to determine whether the court's charge, as a whole, is a correct statement of the law and clearly instructs jurors on the legal principles at issue." Id.

5

A.      Inference Instruction

Ratliff cites Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), in support

of his arguments that the trial court erred when it failed to give the jury the inference and "permissive

pretext only" instructions.  The Reeves Court stated that  "a plaintiff's prima facie case, combined

with sufficient evidence to find that the employer's asserted justification is false, may permit the trier

of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. In contrast,

Gainesville counters that the jury instructions were correct, given that the trial judge's General

Instructions[6] to the jury complied with The Fifth Circuit Pattern Jury Charges.[7]  With respect to the

---

[6] The jury charge stated in part:

> While you should consider only the evidence in this case, you are permitted
> to draw such reasonable inferences from the testimony and exhibits as you feel
> are justified in the light of common experience.  In other words, you may
> make deductions and reach conclusions that reason and common sense lead
> you to draw from the facts that have been established by the testimony and
> evidence in this case . . . .  There are two types of evidence that you may
> consider in properly finding the truth as to the facts of the case.  One is direct
> evidence–such as testimony of an eyewitness.  The other is indirect or
> circumstantial evidence–the proof of a chain of circumstances that indicates
> the existence or nonexistence of certain other facts.  As a general rule, the law
> makes no distinction between direct and circumstantial evidence, but simply
> requires that you find the facts from a preponderance of all of the evidence,
> both direct and circumstantial.

[7] These state:

> You must consider only the evidence in this case.  However, you may draw
> such reasonable inferences from the testimony and exhibits as you feel are
> justified in the light of common experience.  You may make deductions and
> reach conclusions that reason and common sense lead you to make from the
> testimony and evidence . . . .  There are two types of evidence you may
> consider.  One is direct evidence–such as testimony of an eyewitness.  The
> other is indirect or circumstantial evidence–the proof of circumstances that
> tend to prove or disprove the existence or nonexistence of certain other facts.
> The law makes no distinction between direct and circumstantial evidence, but

6

inference instruction, the City also states it would have simply been a redundancy and notes that this Circuit requires no such instruction.

We, however, find Ratliff's argument persuasive, in light of the Supreme Court's admonition in Reeves, as well as our precedent post-Reeves rejecting district court judgments that have not comported with Reeves. See, e.g., Blow v. City of San Antonio, Tex., 236 F.3d 293, 297 (5th Cir. 2001), reh'g en banc denied, 240 F.3d 745 (5th Cir. 2001) (finding that the district court's reasoning was inconsistent with Reeves when it granted summary judgment for the defendant because it found no summary judgment evidence connecting the failure to hire the plaintiff with her race and stating that "Reeves held that a trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation [in conjunction with a plaintiff's prima facie case of discrimination]"); Evans v. City of Bishop, 238 F.3d 586, 591 (5th Cir. 2000) (reversing a summary judgment in favor of the defendant because the plaintiff made a prima facie case and created a jury issue as to pretext on the defendant's proffered justification and stating that "the fact finder 'may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . .'") (emphasis added) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 223 (5th Cir. 2000) (reiterating that "[a] unanimous Court held that this circuit had 'misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification

---

simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

U.S. FIFTH CIRCUIT DIST. JUDGES ASSOC., PATTERN JURY INSTRUCTIONS: CIVIL CASES-CONSIDERATION OF THE EVIDENCE § 2.18 (1999).

7

is false, may permit the trier of fact to conclude that the employee [sic] unlawfully discriminated'")

(citing Reeves, 530 U.S. at 146-48); Rubinstein, 218 F.3d at 400 (acknowledging the impact of

Reeves, in the context of Title VII, by stating that "[w]hile we are mindful of the Supreme Court's

recent admonition that Title VII plaintiffs need not always present evidence above and beyond their

prima facie case and pretext, . . . discrimination suits still require evidence of discrimination").[8]

B.      "Pretext Plus" v. "Permissive Pretext Only"

Ratliff similarly asserts that the instruction[9] that the trial judge gave to the jury incorporated

the "pretext plus" standard and is in direct contravention to the "permissive pretext standard" that

---

[8] Our precedent and holding also conform with those taken by our sister circuits pre-Reeves. See Smith v. Borough of Wilkinsburg, 147 F.3d 272, 280 (3d Cir. 1998) (stating that "jurors must be instructed that they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision"); Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir. 1994) (expressing the view that the jury must be informed that it "is entitled to infer, but need not infer" that the plaintiff's burden has been met if it finds that the plaintiff has proved its prima facie case of discrimination and "they disbelieve the defendant's explanation") (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).  Moreover, Smith also notes:

> [w]ithout a charge on pretext, the course of the jury's deliberations will depend on whether the jurors are smart enough or intuitive enough to realize that inferences of discrimination may be drawn from the evidence establishing plaintiff's prima facie case and the pretextual nature of the employer's proffered reasons for its actions.  It does not denigrate the intelligence of our jurors to suggest that they need some instruction in the permissibility of drawing that inference.

147 F.3d at 281.

[9] See discussion, supra Factual and Procedural History.

8

the Supreme Court laid out in <u>Reeves</u>[10] regarding a plaintiff's burden of proof under the ADEA.  The "pretext plus" strand of analysis requires a plaintiff not only to disprove an employer's proffered reasons for the discrimination, but also to introduce additional evidence of discrimination.  <u>See Kline v. Tenn. Valley Auth.</u>, 128 F.3d 337, 343 (6th Cir. 1997).   In contrast, the "permissive pretext only" standard is a more lenient approach, and if the plaintiff establishes that the defendant's reasons are pretextual, the trier of fact is permitted, but not required, to enter judgment for the plaintiff.  <u>See id.</u>

The City relies on <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 994 (5th Cir. 1996) (en banc) to support its proposition that this Court strictly adheres to the "pretext plus" standard and therefore requires no instruction with respect to the "permissive pretext only" standard.  <u>See id.</u> (stating that "[i]f the evidence put forth by the plaintiff to establish the prima facie case <u>and</u> to rebut the employer's reason is not substantial, a jury cannot reasonably infer discriminatory intent . . . ." and "[w]hen a plaintiff has offered pretextual evidence that allows a factfinder to reject the defendant's proffered reasons <u>and</u> infer discrimination, other circuits have been unwilling to upset a jury verdict for the plaintiff") (emphasis added) (citations omitted).   The City correctly notes that this Circuit pronounced that <u>Rhodes</u> was found to be generally consistent with <u>Reeves</u> in <u>Vadie v. Mississippi State University</u>, 218 F.3d 365, 373 n.23 (5th Cir. 2000), <u>reh'g en banc denied</u>, 232 F.3d 212 (2000), <u>cert. denied</u>, 121 S. Ct . 859 (2001).  Nonetheless, this Court has unequivocally stated that it no longer adheres to its pretext-plus requirement in light of the Supreme Court's decision in <u>Reeves</u>. <u>See Russell</u>, 235 F.3d at 223 n.4 (noting that our prior standard of "pretext-plus" is "contrary to the Court's holding [in <u>Reeves</u>] that the employer's prevarication may be sufficient in many cases to

---

[10] The relevant portion of <u>Reeves</u> is that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  530 U.S. at 148.

9

demonstrate discriminatory animus" and underscoring "that <u>Reeves</u> is the authoritative statement regarding the standard for judgment as a matter of law in discrimination cases. . . . insofar as <u>Rhodes</u> is inconsistent with <u>Reeves</u>, we follow <u>Reeves</u>").

Our holding moreover accords with other recent Fifth Circuit precedent. <u>See Blow</u>, 236 F.3d at 298 (finding that the <u>Reeves</u> Court overruled "the Fifth Circuit [because it] had erred in assuming that a plaintiff must introduce 'additional, independent evidence of discrimination' and reiterating that a "plaintiff has proved her prima facie case; [when] she has presented sufficient evidence to create a material issue of disputed fact as to whether the employer's explanation was false; and there are no unusual circumstances that would prevent a rational fact-finder from concluding that the employer's reasons for failing to promote her were discriminatory and in violation of Title VII") (citing <u>Reeves</u>, 530 U.S. at 149); <u>see also Evans</u>, 238 F.3d at 592 (noting that "[t]he Supreme Court in Reeves [sic] emphasized the importance of jury fact finding and reiterated that evidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination") (citing <u>Reeves</u>, 530 U.S. at 148). Thus, because the jury instructions failed to conform to <u>Reeves</u> or to our precedent post-<u>Reeves</u>, we find that the district court erred.

C.    <u>Taint Instruction</u>

Ratliff urges as a third argument that the trial court erred when it refused to give a taint instruction to the jury. Ratliff proffered, in part, the following taint instruction:

> A <u>corporation</u>, of course, may only act through natural persons, who are known as its agents. In general, any agent or representative of a corporation whether an employee of the corporation or a contractor, possessing adequate authority, may bind a corporation by his or her acts, declarations and omissions . . . . [I]f you find that one or more members of the Gainesville council members was affected or made its recommendations based upon age discriminatory motives or reasons,

> you may infer that taint of age discrimination affected or impacted the entire council in its selection decision.

(emphasis added)   On appeal, Ratliff asserts that Hatcher[11] and Kaden, respectively the Mayor and Mayor Pro Tem of Gainesville, who sat on the Council and openly admitted that age was an important factor in the Council's decision to hire Mueller, "tainted" the City Council, resulting in the Council's being a "rubber stamp" of Hatcher and Kaden's desires.  Although discussing no Fifth Circuit precedent directly supporting the requirement of a taint instruction, Ratliff relies on two cases examining the issue of whether the bias of influential people may taint an employment decision that is ultimately made by another person.   See, e.g., Haas v. ADVO Sys., Inc., 168 F.3d 732, 734 (5th Cir. 1999) (rejecting the contention that there was no discriminatory influence upon the relevant decision maker); Long v. Eastfield Coll., 88 F.3d 300, 307 (5th Cir. 1996) (referring  to such taint as the "cat's paw").

The City, however, is correct in noting that not only is it not a corporation, but also that our precedent requires no such instruction.  Indeed, the Fifth Circuit precedent that Ratliff cites in support of his argument, Haas and Long, did not involve a group tainted by the discriminatory animus of one or two members of a group.[12]   We hold, therefore, that the district court did not err.

---

[11] Also, according to Eisenlohr's testimony, Hatcher "called the shots" on the City Council.  See discussion, supra Factual and Procedural History.

[12] Although the Court in Reeves acknowledged the possibility of the ultimate decision maker's decision being tainted by the discriminatory animus of another influential person, the Court did not mandate an instruction involving such taint.  See Reeves, 530 U.S. at 152-53.  Moreover, although Russell noted that an employee, who demonstrated age-based animus, influenced and possessed leverage over the plaintiff's employer, taint of the Council by Hatcher and Kaden was not a fact issue at trial.  Furthermore, Russell similarly did not mandate a taint instruction.

11

II.     Spoiliation

Ratliff also asserts that the trial court erred when it excluded evidence from the jury regarding the City Council's failure to retain documentation mandated by federal and state law with respect to his age discrimination claim.  This Court reviews evidentiary rulings for abuse of discretion.  Vance v. Union Planters Corp., 209 F.3d 438 (5th Cir. 2000).  Ratliff points, in particular, to the Council's failure to follow federal law mandating one-year retention of documentation relating to the failure or refusal to hire an individual.  See 29 C.F.R. Ch. XIV.  He also points to the City Council's failure to retain tape recordings and certified agendas of its executive sessions in keeping with Texas law.  See TEX. GOVT. CODE ANN. § 551.104(a) (2000).

The City responds that it mainly kept certified agendas, in lieu of tapes, in accordance with state law.  It also states that any destruction of any documentation or tapes related to Ratliff's application or the general hiring process was incidental and occurred because several members of the City Council had not been re-elected.  It, therefore, asserts that there was no bad faith destruction of this evidence.  See United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000).

Indeed, the district and magistrate courts noted that the spoiliation of this evidence, in particular with regard to the tapes, was not in bad faith because Gainesville "simply re-used the tapes to record subsequent meetings" before it could have anticipated the litigation generated by Ratliff's August 29, 1995, EEOC charge.  The district court reached this conclusion after considering Ratliff's allegations three times and re-opening discovery one week before trial in order to allow further exploration of the spoiliation issue.  The record, therefore, does not reflect that the district court

12

abused its discretion by admitting into evidence the City Council's failure to retain this documentation.[13]

## CONCLUSION

Because we find that the district court did not err in refusing to give a "taint" instruction and to admit into evidence destruction of material regarding Ratliff's claim, we affirm in part. Because we find, however, that, in light of the changes made to a plaintiff's evidentiary burden in discrimination cases outlined in <u>Reeves</u>, the district court erred in failing to give an inference instruction and holding jurors to a "pretext plus" standard, we reverse in part and remand for a new trial.

AFFIRMED IN PART. REVERSED IN PART AND REMANDED FOR NEW TRIAL.

---

[13] Hence, the probative value of the Council's destruction of the records and tapes did not outweigh the prejudice of admitting the evidence. <u>See</u> FED. R. EVID. 403.