In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00072-CV


______________________________




SANDY WALDMILLER, Appellant



V.



CONTINENTAL EXPRESS, INC., Appellee




 


On Appeal from the 190th Judicial District Court


Harris County, Texas


Trial Court No. 99-60232




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Sandy Waldmiller sued Continental Express, Inc. (Continental) for age-related employment
discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). Continental
successfully moved for summary judgment. Waldmiller appeals, contending that the trial court erred
in granting summary judgment.

 The TCHRA prohibits employment discrimination with respect to compensation or the terms,
conditions, or privileges of employment because of race, color, disability, religion, sex, national
origin, or age. See Tex. Lab. Code Ann. §§ 21.001-.556. (Vernon 1996 & Supp. 2002). (1) One of
TCHRA's purposes is to "provide for the execution of the policies of Title VII of the Civil Rights
Act of 1964 and its subsequent amendments." Tex. Lab. Code Ann. § 21.001(1). Therefore,
analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.
Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001); NME Hosps., Inc. v. Rennels,
994 S.W.2d 142, 144 (Tex. 1999). (2)

 Federal courts recognize two types of Title VII employment discrimination cases, each
requiring different elements of proof. The first type is the "pretext" case, in which the plaintiff's
ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for
discrimination. Texas  Dep't  of  Cmty.  Affairs  v.  Burdine,  450  U.S.  248,  252-56,  101 S.Ct.
1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct.
1817, 36 L.Ed.2d 668 (1973). The plaintiff can usually provide sufficient evidence of discriminatory
intent by showing that the employer's proffered reason for the adverse action is false. Quantum
Chem. Corp. v. Toennies, 47 S.W.3d at 476 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530
U.S. 133, 142-48, 120 S.Ct. 2097, 147 L.Ed.2d 268 (2000)). The second type of case is the "mixed-motive" case, in which the plaintiff has direct evidence of discriminatory animus. This direct
evidence shifts the burden of proof to the employer to show that legitimate reasons would have led
to  the  same   decision  regardless  of  any  discriminatory  motives.  Price  Waterhouse  v. Hopkins,
490 U.S. 228, 244-45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Starceski v. Westinghouse Elec.
Corp., 54 F.3d 1089, 1095-99 (3d Cir. 1995). Thus, how a case will be classified depends entirely
on the presence or absence of direct evidence. Price Waterhouse v. Hopkins, 490 U.S. at 276. If the
plaintiff has only circumstantial evidence of discrimination, the case will be classified as a pretext
case regardless of how many motives the employer had. Mooney v. Aramco Servs. Co., 54 F.3d 1207,
1216 (5th Cir. 1995); Starceski v. Westinghouse Elec. Corp., 54 F.3d at 1097-98.

 Both Waldmiller and Continental have correctly characterized this as a pretext case. The
Supreme Court defined the order and allocation of proof for a pretext case in McDonnell Douglas
Corp. v. Green, 411 U.S. at 802, and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 252-53.
Initially, the complainant must establish a prima facie case of discrimination. McDonnell Douglas
Corp. v. Green, 411 U.S. at 802. Although the precise elements of discrimination will vary
depending on the allegations, id. at 802 n.13, the complainant's burden at this stage of the case "is
not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253. In our circumstances, a
prima facie case will be considered as established if Waldmiller can show that: (1) she was a
member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an
adverse employment action, and (4) others similarly situated were more favorably treated. See
Urbano v. Cont'l Airlines, 138 F.3d 204, 206 (5th Cir. 1998). The establishment of a prima facie
case in effect creates a presumption that the employer unlawfully discriminated against the
employee. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254. To establish a presumption is
to say that a finding of the prima facie case produces a required conclusion against the employer in
the absence of an explanation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742,
125 L.Ed.2d 407 (1993). Thus, once the plaintiff has established a prima facie case, a burden of
production falls to the employer to articulate a legitimate, nondiscriminatory reason for any alleged
unequal treatment. St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07; McDonnell Douglas Corp.
v. Green, 411 U.S. at 802. This burden is one of production, not persuasion; it can "involve no
credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 509. If the employer satisfies
this burden of production, the presumption of discrimination created by the plaintiff's prima facie
showing is eliminated, see Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, and all that
remains is the plaintiff's burden to persuade the fact-finder that the proffered reason was not the true
reason for the employment decision and that the improper consideration-in this case, age-was the
true reason. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507-08. 

 The ultimate question is whether the employer intentionally discriminated against the
employee. Id. at 511. Because proof that the defendant's explanation is unworthy of credence is
simply one form of circumstantial evidence that is probative of intentional discrimination, Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. at 147, the fact-finder's disbelief of the reasons put
forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,
together with the elements of the prima facie case, suffice to show intentional discrimination. Id.;
St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 511. In other words, in appropriate circumstances, it is
permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the
employer's explanation. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 147. Consistent
with this proposition, in a discrimination case, a plaintiff in Texas can defeat a summary judgment
motion by presenting evidence raising a fact issue on pretext or by challenging the defendant's
summary judgment evidence as failing to prove, as a matter of law, a legitimate, nondiscriminatory
reason for the challenged employment action. M. D. Anderson Hosp. & Tumor Inst. v. Willrich, 28
S.W.3d 22, 24 (Tex. 2000). (3) 

 The propriety of summary judgment is a question of law. We review the trial court's
summary judgment decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 With the traditional motion for summary judgment, the movant bears the burden of
establishing that there is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644
(Tex. 1995). A defendant moving for summary judgment must negate at least one essential element
of each of the plaintiff's theories of recovery, Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828
(Tex. 1970), or plead and conclusively establish each element of an affirmative defense. City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). If the moving party fails
to meet its burden of proof, the nonmovant has no burden and the motion must fail. See id. If the
moving party produces evidence entitling it to summary judgment, the burden shifts to the
nonmovant to present evidence that raises a material fact issue. Phan Son Van v. Pena, 990 S.W.2d
751, 752 (Tex. 1999); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; every reasonable inference must be indulged in favor of the
nonmovant and any doubt resolved in its favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d at 548-49. 

 In a no-evidence motion for summary judgment, a party may move for summary judgment
without being required to put forth any evidence of its own, on the ground there is no evidence of
one or more essential elements of a claim or defense on which the adverse party would have the
burden of proof at trial. Tex. R. Civ. P. 166a(i). Thus, with the no-evidence motion, the nonmovant
rather than the movant bears the burden to produce evidence of probative force to raise a fact issue
on the material questions presented. See Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.
App.-Austin 1998, no pet.). The motion must specifically state what elements of the claim or
defense are lacking any evidentiary support. See Tex. R. Civ. P. 166a(i). As with a traditional
summary judgment motion, the court must consider all of the summary judgment evidence in the
light most favorable to the nonmovant; every reasonable inference must be indulged in favor of the
nonmovant and any doubt resolved in its favor. See Jackson v. Fiesta Mart, Inc., 979 S.W.2d at 70. 
A no-evidence challenge must be sustained when: (1) there is a complete absence of evidence of
a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than
a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence
exists when the evidence rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions. 

 Continental's summary judgment motion referenced both the no-evidence and the traditional
summary judgment standards without clearly distinguishing between the evidence, arguments, and
authorities supporting each. The trial court granted the motion without specifying the grounds.
Where a judgment does not specify the ground or grounds on which it is granted, summary judgment
will be affirmed on appeal if any of the theories advanced in the motion for summary judgment is
meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). Although the rules do
not prohibit a hybrid traditional and no-evidence motion as long as fair notice of all allegations are
given, the better practice is either to file two separate motions, one containing the no-evidence
summary judgment and one containing the ordinary summary judgment, or to file one document
containing both motions but with the arguments and authorities for each clearly delineated and
separate from one another. See Grant v. Southwestern Elec. Power Co., 20 S.W.3d 764, 768 (Tex.
App.-Texarkana 2000, pet. granted). The substance of Continental's motion for summary judgment
is that Waldmiller cannot produce sufficient evidence showing that she was qualified for the
position, and thus she cannot establish her prima facie case, and she cannot produce sufficient
evidence to create a fact issue regarding discrimination. 

 The relevant facts regarding Waldmiller's qualifications are as follows. Continental is a
regional air carrier wholly owned by Continental Airlines, Inc. Waldmiller began to work for
Continental as a flight attendant in June of 1994. In either March or April of 1998, Continental
promoted Waldmiller, then forty-eight years of age, to the position of in-flight training manager. 
Continental hired Karen Miles to be Waldmiller's new supervisor on January 16, 1999, after having
demoted Waldmiller's original supervisor. Approximately one month later, on February 18, 1999,
Miles demoted Waldmiller to the position of flight attendant. Waldmiller had served as the in-flight
training manager for less than one year. Continental's initial argument is that Waldmiller performed
her duties so poorly that she had proved herself unqualified for the position.

 As the in-flight training manager, Waldmiller was responsible for meeting with
representatives from the Federal Aviation Administration (FAA) and for ensuring that the flight
attendants' procedures and training were in compliance with FAA regulations. In order to effectuate
such compliance, Waldmiller was charged with the responsibility for an in-flight manual that
informed all flight attendants of pertinent FAA requirements. However, there were also other
persons who were involved in the manual's revision process. It was Waldmiller's duty to update the
manual by inserting alert bulletins into the manual that notified the flight attendants that the FAA
was changing some aspect of the in-flight procedure, and to eventually replace these alert bulletins
with more permanent and comprehensive revisions to the in-flight manual. Waldmiller was also
charged with ensuring that all flight attendants stayed qualified for their positions; for hiring trainers;
for the initial and recurrent training of flight attendants; and for crew communication resources. (4) 

 Although Miles had complaints about different aspects of Waldmiller's job performance, the
primary reason Continental considered Waldmiller to have been deficient in her performance and
therefore unqualified, was her alleged failure to maintain the in-flight manual. Miles' description
of the events pertaining to the manual, leading up to Waldmiller's demotion, is as follows. She
began her new position as Waldmiller's supervisor on January 16, 1999. The next day Miles met
with an FAA representative, Glenn Hamilton, for two hours at Hamilton's request. (5) Miles took notes
at this meeting. According to Miles, Hamilton had earmarked approximately sixty percent of the
manual as containing inconsistencies and concerns related to regulations, outdated material, and poor
planning. Hamilton told Miles that he had already met with Waldmiller and her group about two
weeks earlier to discuss his concerns. Miles further testified that on the same day she met with 
Hamilton, she discussed the manual with Waldmiller. Waldmiller explained that Continental's in-house technical publisher, herself, and her department were going "back and forth" with a revision
and had been doing so for some time, and that part of the reason for the delay was that Waldmiller
felt that in-flight training was not a priority with the publisher. On February 4, Miles met with 
Waldmiller again and they discussed Waldmiller's job performance, particularly as it related to the
manual. Apparently, this was a "warning meeting" at which Miles formed the opinion that it would
be necessary to find someone other than Waldmiller who would make the revisions to the manual
a priority. On February 18, 1999, Miles demoted Waldmiller to the position of flight attendant. 
According to Waldmiller, when she learned that she was being demoted, she asked Miles if there
was any problem with her performance. Miles' reply was that there was no problem. She said she
just did not like Waldmiller and did not want to work with her. Miles further stated that it was her
department and she could do what she wanted.

 Hamilton, the FAA representative, executed two affidavits, the second purporting to correct
the first. Hamilton's first affidavit was produced by Waldmiller in response to Continental's motion
for summary judgment. Continental produced the second affidavit in reply to Waldmiller's response. 
Both affidavits state that Hamilton met with Waldmiller on January 22, 1999. At that time, they
discussed issues of possible regulatory noncompliance and suggestions for improvement, and
Hamilton reviewed an extensive revision to the in-flight manual, which Waldmiller advised him was
in the process of completion as of that date. As noted, the two affidavits state different times for
Hamilton's meeting with Miles. Miles had testified that she met with Hamilton on January 17. 

 Hamilton's first affidavit states that he met with Miles for the first time on April 6, 1999, in
order to introduce himself and discuss the manual. He specifically pointed out in this affidavit that
he had not met with Miles before April 6. That would place the meeting between Hamilton and
Miles about two and one-half months after Waldmiller had been demoted. The affidavit further
states that at that meeting, he informed Miles for the first time that the condition of the manual could
be a possible violation of FAA regulations and that his office would like to see a revision completed
within thirty days. Hamilton attached to this first affidavit a copy of his meeting notes supporting
the information contained in his affidavit. If Hamilton's first affidavit is true, the unequivocal
implication is that Miles' testimony is false. Hamilton's second affidavit does not state a specific
date for his meeting with Miles. It states only that he met with Miles in her office during her first
week on the job. In order to explain the corroborating meeting notes attached to the first affidavit, 
Hamilton stated in his second affidavit that the notes were not made contemporaneously and include
information from his meeting with Miles during her first week on the job. 

 Miles did testify that Hamilton was not the sole source of information on the deficiencies of
the manual, but that she discussed the manual with others in her department. And as stated above,
Continental alleges other instances of Waldmiller's employment deficiencies. Nevertheless, the
alleged meeting between Miles and Hamilton is the primary support for Continental's reason for the
demotion. Contrary to Continental's argument, Hamilton's second affidavit does not cancel or
invalidate his first affidavit. One party obviously cannot amend an opposing party's supporting
affidavit. What we have here is two sides, each producing an affidavit in conflict with the other
side's version of the facts. This simply constitutes conflicting testimony, even though it is from the
same person, and raises a conflict for the fact-finder to resolve. 

 We review the summary judgment evidence in the light most favorable to Waldmiller. Doing
so, we find that a fact issue is demonstrated as to whether Waldmiller was qualified for her previous
position. Furthermore, Waldmiller has produced evidence that raises a fact issue on whether
Continental's proffered reason was the true reason for her demotion. As the Texas Supreme Court
has stated, the fact-finder's disbelief of the reasons put forward by the defendant, particularly if the
disbelief is accompanied by a suspicion of mendacity, may, together with the elements of the prima
facie case, suffice to show intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. at 147; St. Mary's Honor Center v. Hicks, 509 U.S. at 511. The motion for summary
judgment was granted in error. 




 We reverse the judgment and remand the cause to the trial court for further proceedings..


 William J. Cornelius

 Chief Justice


Date Submitted: February 27, 2002

Date Decided: March 28, 2002


Publish
1. Texas Labor Code Section 21.051, which tracks the language of Title VII of the Civil Rights
Act, see 42 U.S.C.A. § 2000e-2 (West 1994), reads: 

 An employer commits an unlawful employment practice if because of race, color,
disability, religion, sex, national origin, or age the employer: (1) fails or refuses to
hire an individual, discharges an individual, or discriminates in any other manner
against an individual in connection with compensation or the terms, conditions, or
privileges of employment; or (2) limits, segregates, or classifies an employee or
applicant for employment in a manner that would deprive or tend to deprive an
individual of any employment opportunity or adversely affect in any other manner
the status of an employee. 

Tex. Lab. Code Ann. § 21.051 (Vernon 1996). 
2. Federal decisions construing the Age Discrimination in Employment Act (ADEA) are also
of precedential value in cases such as this. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.
133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (applying the framework for pretext
discrimination cases outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct.
1817, 36 L.Ed.2d 668 (1973), within the context of an ADEA case).
3. Continental argued in its motion for summary judgment, and continues to argue on appeal,
that in order to defeat the summary judgment motion, Waldmiller must produce competent evidence
(1) that creates a fact issue as to whether Continental's stated reasons were what actually motivated
it; and (2) that creates a reasonable inference that discrimination was a determinative factor in the
adverse employment action. This language describes the so-called pretext-plus standard, which was
the Fifth Circuit standard prior to the Supreme Court decision in Reeves. See Rhodes v. Guiberson
Oil Tools, 75 F.3d 989, 994 (5th Cir. 1996) (en banc); see Reeves v. Sanderson Plumbing Prods.,
Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The "pretext-plus" standard of analysis
requires a plaintiff not only to disprove an employer's proffered reasons for the discrimination, but
also to introduce additional evidence of discrimination. See Ratliff v. City of Gainesville, 256 F.3d
355, 362 (5th Cir. 2001) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 343 (6th Cir. 1997)). In
contrast, the "permissive pretext only" standard is a more lenient approach, and if the plaintiff
establishes that the defendant's reasons are pretextual, the trier of fact is permitted, but not required,
to render judgment for the plaintiff. See id. As the Fifth Circuit has most recently made perfectly
clear, it no longer adheres to any pretext-plus requirement in light of the Supreme Court's decision
in Reeves. See Ratliff v. City of Gainesville, 256 F.3d at 362.
4. The deposition transcript makes reference to a job posting for Waldmiller's position. 
Waldmiller affirmed that this posting contained an accurate description of her job duties as in-flight
training manager. Because this job posting, described as Deposition Exhibit No. 2, is nowhere to
be found in the record, we must take our understanding of her job duties piecemeal from deposition
testimony.
5. January 17, 1999, was a Sunday.