**Martha WARREN Plaintiff**

**v.**

**TEREX CORPORATION Defendant**

**No. CIV.A. 3:03CV11.**

United States District Court,
N.D. Mississippi,
Delta Division.

July 22, 2004.

Jim D. Waide, III, Waide & Associates, PA, Tupelo, MS, for Martha Warren, plaintiff.

Jeff Weintraub, William C. Sessions, Weintraub Stock & Grisham, Kenneth Ousley Cooper, McLeary Domico & Kyle, PLLC, Memphis, TN, Reginald E. Jones, Coudert Brothers LLP, Washington, DC, for Terex Corporation, defendant.

*ORDER*

MILLS, District Judge.

This cause comes before the court on its own motion addressing legal issues relevant to the proposed jury instructions submitted by the parties. The court directs

that the parties review this order and resubmit proposed jury instructions consistent with the court's legal conclusions stated herein. The court recognizes that the resubmission of any such instructions will not serve to waive any party's right to argue in favor of their original proposed instructions on appeal.

Warren, an African–American female, filed this race discrimination and retaliation action against her former employer Terex, seeking recovery arising out of her alleged termination as a human resources manager. Terex disputes that Warren was terminated, submitting instead that she voluntarily resigned her position at the company. At any rate, it is undisputed that Warren ceased to be a Terex employee on July 13, 2001, which was approximately three months after she first raised concerns with management about disparities between her pay and that of comparable white employees. On January 17, 2003, Warren filed this action, seeking recovery for the discrimination and retaliation which she allegedly suffered.

In previously denying summary judgment, this court concluded that Warren had established genuine fact issues regarding her retaliation claims and (narrowly) regarding her claims that she was terminated based on her race. This court made it clear in its order that it was dismissing any discrimination claims arising out of plaintiff's disparate pay allegations, and the court further made it clear that it might dismiss plaintiff's discrimination (as opposed to retaliation) claims altogether after the presentation of the evidence at trial. Soon after this court's order denying summary judgment, the parties submitted proposed jury instructions.

This court does not ordinarily issue separate orders clarifying jury instruction issues, but the court deems such to be necessary in this case, in order to address the numerous legal uncertainties arising out of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In particular, the court finds it necessary to address (or perhaps more accurately, to guess) whether, in the Fifth Circuit, a plaintiff may assert a mixed-motive retaliation claim based upon circumstantial, rather than direct, evidence. While plaintiffs have long been able to seek recovery in cases in which they assert that illegal discrimination and/or retaliation was a motivating factor, along with legal factors, for an adverse employment action, most circuits, until recently, assumed that plaintiffs seeking to prove their case by circumstantial evidence were limited to a pretext, rather than a mixed-motive analysis. *See, e.g., Mohr v. Dustrol, Inc.,* 306 F.3d 636, 640–641 (8th Cir.2002); *Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572, 580 (1st Cir.1999).

In *Desert Palace,* the Supreme Court expressly rejected the "direct evidence" requirement in Title VII discrimination cases, holding that in order to qualify for a mixed-motive instruction, "a plaintiff need only present sufficient evidence [either direct or circumstantial] for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* at 2155. While momentous in its implications, *Desert Palace* was merely an interpretation of 42 U.S.C. § 2000e–2(m), which was enacted as part of the Civil Rights Act of 1991 and was clearly intended to address certain holdings in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

Section 2000e–2(m) sets forth standards applicable in a mixed motive case, providing that "'[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the com-

plaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.'" 42 U.S.C. § 2000e–2(m). In a related vein, another 1991 revision to Title VII provides that, once a plaintiff proves a mixed-motive violation under § 2000e–2(m), the employer can still establish a limited affirmative defense by demonstrating that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B). This limited affirmative defense does not absolve the employer of liability, but rather restricts the remedies available to a plaintiff to declaratory relief, certain types of injunctive relief, and attorney's fees and costs. *Id.*

In the present case, plaintiff has submitted no direct proof of discrimination or retaliation, although the court found her circumstantial proof to be sufficiently strong to survive summary judgment under the *McDonnel Douglas* analysis. *Desert Palace* clearly establishes that plaintiff will be entitled to proceed under a mixed-motive theory with regard to her Title VII discrimination claims, assuming that these discrimination claims survive any motion for directed verdict submitted by defendant. The more difficult question is whether plaintiff will be entitled to a mixed-motive instruction with regard to her retaliation claims.

Retaliation claims arise out of a separate provision in Title VII which makes it an "unlawful employment practice" for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In interpreting *Desert Palace*, one commentator noted that it was an unsettled issue as to whether the decision would be held applicable to ADEA, retaliation, and other cases which are not directly impacted by the language in § 2000e–2(m):

> The Supreme Court's recent [*Desert Palace* ] opinion, however, did not finally resolve all the issues concerning the level of evidence sufficient to warrant a mixed–motives instruction. The [*Desert Palace* ] opinion focused exclusively on the language of the 1991 amendments to Title VII, which were passed in response to *Price Waterhouse,* to reach the conclusion that a mixed-motives case may be proven by direct and/or circumstantial evidence. As a result, [*Desert Palace* ] is limited to cases under Title VII and arguably does not apply other discrimination statutes, such as the Age Discrimination in Employment Act (ADEA), the Pregnancy Discrimination Act (PDA), or even the retaliation provisions of Title VII, which were not similarly amended after *Price Waterhouse.*

R. Joseph Barton, *Determining the Meaning of "Direct Evidence" in Discrimination Cases Within the Eleventh Circuit,* 77 Fla. Bar Journal 42 (Oct.2003).

Recent authority suggests that the issue of *Desert Palace's* applicability, if any, outside of the Title VII discrimination context will be a contentious one. For example, at least one district judge has concluded in an unpublished opinion that *Desert Palace* "do[es] not apply to age discrimination cases," *see Bolander v. BP Oil Co.,* 2003 WL 22060351, *3 (N.D.Ohio 2003), while the Fifth Circuit recently reached the opposite conclusion in *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305 (5th Cir.2004). Obviously, the *Rachid* decision is the significant one for this court's purposes, and, for the reasons discussed *infra, Rachid* supports a conclusion that, in this circuit at least, *Desert Palace* will apply to retaliation claims.

The court would initially note that the *Rachid* decision is a momentous one which, unless modified by the full Fifth Circuit or by subsequent Supreme Court decisions, will likely impact discrimination cases in this circuit for years to come. *Rachid* not only held *Desert Palace* to be applicable outside of the Title VII discrimination context but also interprets the Supreme Court's decision as requiring a very significant modification of the familiar *McDonnell Douglas* framework. Given its importance, the court will quote *Rachid's* central holding in its entirety:

> Our holding today that the mixed-motives analysis used in Title VII cases post-*Desert Palace* is equally applicable in ADEA [cases] represents a merging of the *McDonnell Douglas* and *Price Waterhouse* approaches. Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach: the plaintiff must still demonstrate a *prima facie* case of discrimination; the defendant then must articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).' " . . . If a plaintiff demon-

strates that age was a motivating factor in the employment decision, it then falls to the defendant to prove "that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails."

*Rachid,* at 312 (citations omitted).

■ In light of *Desert Palace* as interpreted by *Rachid,* Title VII discrimination and ADEA plaintiffs in this circuit are not limited to proving that a defendant's stated nondiscriminatory reasons for terminating them are false or otherwise pretextual; they may also prove that "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* A plaintiff's failure to prove the falsity of a defendant's stated nondiscriminatory reason has doomed many a discrimination case in this circuit, and the mixed-motive alternative set forth in *Rachid* will thus likely prove to be a lifeline for many discrimination cases which would otherwise not have survived summary judgment. Clearly, it will be easier for many plaintiffs to circumstantially prove that discrimination was one factor motivating an adverse employment decision than it would be to prove that the nondiscriminatory reason offered by the defendant is false. Regardless, the court has already denied summary judgment in this case, and the relevant issue is the applicability, if any, of *Desert Palace* and *Rachid* to retaliation claims, and also the impact of these decisions upon jury instructions in this case.[1]

---

1. While the court has noted the modification to the *McDonnell Douglas* standard in *Rachid,* the court is also aware that "district courts should not frame jury instructions based upon the intricacies of the *McDonnell Douglas* burden shifting analysis" but "should instruct the jury to consider the ultimate question of whether a defendant took the adverse employment action against a plaintiff because of her protected status." *Kanida v. Gulf Coast Medical Personnel LP,* 363 F.3d 568, 576 (5th Cir. 2004). In this case, the parties have submitted instructions which closely track the *McDonnell Douglas* framework, but the court directs that the parties re-submit instructions which deal more narrowly with the issue of the "ultimate question" of "whether a defen-

If the court were to consider the issue of *Desert Palace's* applicability to retaliation claims in isolation, it might well conclude that *Desert Palace* applied only to Title VII discrimination, rather than retaliation, claims. *Desert Palace* is largely a case of statutory interpretation, and § 2000e–2(m) does not mention "retaliation" as one of the illegal motivating factors which will support recovery by a plaintiff. At the same time, § 2000e–2(m) similarly fails to mention "age" as being a relevant motivating factor, and this fact did not prevent the Fifth Circuit in *Rachid* from holding that *Desert Palace* applied to ADEA claims. This is not to suggest that the holding in *Rachid* was illogical. To the contrary, it seems likely that § 2000e–2(m) represented an effort by Congress to modify certain aspects of the *Price Waterhouse* decision, rather than a conscious adoption of a more lenient standard of recovery in Title VII discrimination cases as opposed to ADEA and retaliation cases. Accordingly, while *Rachid* does not track the literal language of § 2000e–2(m), it likely reflects the intent of Congress in enacting the provision.

The court would also note that the one federal appellate court decision which this court was able to find on this issue indicates that *Desert Palace* does, in fact, apply to retaliation claims. *See Calmat Co. v. U.S. Dept. of Labor*, 364 F.3d 1117, 1123 n. 4 (9th Cir.2004). More importantly for this court's purposes, the reasons cited by the Fifth Circuit in *Rachid* for applying *Desert Palace* to ADEA claims similarly support an application of *Desert Palace* to retaliation claims. In reaching its decision, the *Rachid* panel emphasized that the language of Title VII and the ADEA each prohibit discrimination "because of" a protected characteristic, *Rachid*, at 309, and the retaliation provisions of Title VII simi-

larly prohibit discrimination against an employee "because" that employee has "opposed any practice made an unlawful employment practice" by Title VII. *See* 42 U.S.C. § 2000e–3(a). The *Rachid* panel also emphasized that Title VII and the ADEA are each silent as to any heightened direct evidence requirement, *see id.*, and this is equally true with regard to Title VII's retaliation provisions.

In the view of the court, the most persuasive reason cited by the *Rachid* panel for applying *Desert Palace* to ADEA claims is its observation (quoting a decision of an Illinois district court) that:

> [g]iven the similarities in text and purpose between Title VII and ADEA, as well as the consistent trend of transferring the various proof methods and their accompanying rules from one statute to the other, this Court considers it likely that whatever doctrinal changes emerge as a result of *Desert Palace* in the Title VII context will be found equally applicable in the ADEA arena.

*Id.* (quoting *Strauch v. Am. College of Surgeons*, 301 F.Supp.2d 839, 844 (N.D.Ill. 2004)). This rationale similarly supports an application of *Desert Palace* to retaliation claims, which have developed in a manner similar to Title VII discrimination and ADEA claims, including through the application of the *McDonnell Douglas* burden-shifting framework.

Any application of *Desert Palace* to Title VII discrimination and ADEA, but not to retaliation, cases would create a yawning gulf between these cases which has not previously existed in this circuit. While some early Fifth Circuit decisions suggested that plaintiffs in Title VII retaliation, but not discrimination, cases might be required to demonstrate an "ultimate em-

dant took the adverse employment action against a plaintiff because of her protected

status."

ployment decision," *see e.g. Burger v. Cent. Apartment Mgmt., Inc.,* 168 F.3d 875, 878–79 (5th Cir.1999), the Fifth Circuit has since indicated that no such distinction exists. *See Felton v. Polles,* 315 F.3d 470, 486 (5th Cir.2002); *Fortenberry v. Texas,* 75 Fed.Appx. 924, 927, 2003 WL 22135639 (5th Cir.2003) (applying "ultimate employment decision" requirement to Title VII discrimination claim). This court deems it unlikely that the Fifth Circuit would choose to make retaliation plaintiffs highly disadvantaged as compared to Title VII discrimination and ADEA plaintiffs, considering that it has not done so previously. Indeed, it would appear to be a greater "leap" to apply *Desert Palace* to ADEA claims than to retaliation claims, given that discrimination and retaliation claims are each set forth in Title VII, and considering also the Supreme Court's recent observation that "the prohibition of age discrimination is readily read more narrowly than analogous provisions dealing with race and sex." *General Dynamics Land Systems, Inc. v. Cline,* 540 U.S. ——, ——, 124 S.Ct. 1236, 1247, 157 L.Ed.2d 1094 (2004).

The court therefore concludes that *Desert Palace* applies to Title VII retaliation claims and that plaintiff is entitled to a mixed motive retaliation instruction in this case, her lack of direct evidence of retaliation notwithstanding. As to the specific form of this instruction, this court feels comfortable in adopting a modified version of the instruction tacitly approved by the Supreme Court in *Desert Palace,* as follows:

You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's [race] [retaliation] and also by other lawful reasons. If you find that the [plaintiff's race] [retaliation] was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason. However, if you find that the defendant's treatment of the plaintiff was motivated by both [race] [retaliation] and lawful reasons, you must decide whether the plaintiff is entitled to damages. The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the [plaintiff's race] [retaliation] had played no role in the employment decision.

While the parties should feel free to expand upon this instruction, and to request more specific findings from the jury, the court concludes that this instruction incorporates the essence of the mixed-motive instruction.

■ It also appears that plaintiff will be entitled to a "permissive pretext" instruction in this case, assuming that the evidence at trial supports such an instruction.[2] The Fifth Circuit recently held in *Kanida v. Gulf Coast Medical Personnel LP,* 363 F.3d 568, 576 (5th Cir.2004) that a retaliation plaintiff was entitled to a "permissive pretext" instruction, rather than a "pretext plus" instruction, in light of the

---

2. In its ruling denying summary judgment, this court concluded that plaintiff had established genuine fact issues regarding whether defendant's stated reasons for terminating her were false or otherwise pretextual. It seems possible, however, that the proof at trial will raise jury issues as to whether retaliation was a motivating factor in plaintiff's termination but that the proof will be insufficient for a reasonable jury to conclude that defendant's stated reasons for terminating her are false or otherwise pretextual. Accordingly, the court reserves the right to revisit its conclusion that the proof in this case establishes jury issues regarding pretext, and the court may elect instead to limit plaintiff to proceeding under a mixed-motive theory in this case.

Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In so concluding, the *Kanida* panel applied the holding of another panel in *Ratliff v. City of Gainesville, Tex.*, 256 F.3d 355, 359–60 (5th Cir.2001), even though the panel made it clear that it disagreed with the *Ratliff* panel's general holding that a failure to grant such an instruction would necessarily constitute error. *Kanida*, 363 F.3d at 574. At any rate, it seems clear that a permissive pretext instruction will be proper in this case, assuming that the proof at trial supports same.

In light of plaintiff's option of proving her case under a "mixed-motive" analysis, it no longer seems proper for the jury to be instructed that the plaintiff must prove that discrimination or retaliation was a "but for" cause of her termination, as has previously been held proper in this circuit. *See Kanida*, 363 F.3d at 580. Under *Rachid*, plaintiff now has the option of proving that discrimination and/or retaliation was merely a "motivating factor" in her termination, and such a showing will shift the burden of persuasion to the defendant to show that "the same adverse employment decision would have been made regardless of discriminatory animus." *Id.* If *Rachid* is, in fact, held applicable to retaliation claims, then the granting of a "but for" causation instruction would clearly seem to conflict with the more liberal "motivating factor" causation standard. The court therefore declines to grant a "but for" causation instruction in this case.

The exact form of any jury instructions may be addressed at trial, and the court issues this order merely to outline the broad legal issues in this case, as the court can best interpret them. The court has no doubt that the legal issues in this case are close and difficult ones, and the court rec-ognizes that defendant has colorable arguments that *Desert Palace* should not even apply to retaliation claims at all. At any rate, in light of *Rachid*, this court's "best guess" is that *Desert Palace* does apply to retaliation claims and that it is the intent of the Fifth Circuit, to the extent possible, to adopt a unified approach in Title VII discrimination, ADEA and retaliation claims.

In light of the foregoing, the court directs that the parties prepare proposed jury instructions consistent with the court's order issued this date.