Opinion filed November 2, 2023



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00131-CV

_____

## BARON AVIATION SERVICES, INC., Appellant/Cross-Appellee

## V.

## LARRY KITCHEN, Appellee/Cross-Appellant

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV1711504**

## O P I N I O N

This is an age discrimination case wherein the terminated employee secured a favorable jury verdict against his former employer. Appellee, Larry Kitchen, was employed as a pilot in a "floater" position for Appellant, Baron Aviation Services, Inc. (Baron), a company that transports cargo for Federal Express. On December 1, 2015, Kitchen landed a Cessna 208 at Brownwood Regional Airport in violation of

Federal Aviation Administration (FAA) safety regulations governing minimum visibility conditions at the time of landing. He was immediately terminated.

In this case, we are called on to determine whether the jury properly returned a finding that age discrimination was a motivating factor for Kitchen's termination. Kitchen filed a cross-appeal with four issues that complain about the trial court's reduction in the jury's award of backpay and its application of the damage cap under Section 21.2585(d) of the Texas Labor Code, as well as its refusal to award the amount of attorneys' fees "as proven" and its refusal to award attorney's fees conditioned upon the successful defense of an appeal. Because we have concluded that the evidence was not legally sufficient to support the jury's verdict on liability, we reverse and render.

*Background Facts*

On the day of the incident that led to his termination, Kitchen was assigned to fly from Austin-Bergstrom International Airport to Brownwood Regional Airport.

Airports rely on a device that is known as an Automated Weather Observing System, or "AWOS," to report local conditions. Data from the AWOS is regularly transmitted to a national reporting service or website, where it can be accessed by pilots. Before taking off, pilots are responsible for checking the weather reports at the points of origin and destination to ensure that conditions are favorable for air travel. Whether those conditions are favorable depends in part on whether the pilot will be relying on visual flight or instrument flight rules while traveling. Visual Flight Rules (VFRs) apply when pilots rely on their visual observations to control the aircraft, whereas Instrument Flight Rules (IFRs) apply when pilots rely on the aircraft's instruments to control the aircraft. Baron's policies did not allow pilots to rely on VFRs under most circumstances, and in this instance, Kitchen was required to fly under the IFRs.

Federal regulations prohibit pilots from taking off on an instrument flight unless the reported weather conditions at the intended destination are above authorized minimums. 14 C.F.R. § 135.219 (2018). The same regulations also prohibit instrument landings unless weather conditions are at or above certain minimum conditions. 14 C.F.R. § 135.225(a). According to Frank Zimmerman, the Chief Executive Officer of Baron, the minimum weather conditions at Brownwood Regional Airport include a visibility of "three-quarters" of a nautical mile.

Weather reports from the date of the incident indicate that, at 4:55 a.m., the AWOS in Brownwood began reporting fog, with a visibility of 0.2 miles, and the system continued to report the same level of visibility until 11:15 a.m., when it reported a visibility of 1.8 miles. As such, the reported visibility at Brownwood was well below the IFR minimum when Kitchen took off at 7:46 a.m. They were likewise below the minimum when he landed in Brownwood at 8:37 a.m. Kitchen contended that for ten to twelve years when Brownwood had been a regular route, the AWOS system had been down periodically.

At trial, Kitchen testified that he was aware of the negative weather report for Brownwood. Although he testified that the AWOS in Brownwood was "unreliable," there was no testimony that on the day of the incident and before take-off, Kitchen had confirmed that the Brownwood AWOS was malfunctioning. He stated that when he departed Austin, he had planned to fly to Abilene, which was about twenty minutes flight time from Brownwood. From there, he planned to wait until conditions were favorable for him to land in Brownwood. Kitchen stated that he reported the change in his flight plan to Baron. Baron's records, however, show that Brownwood was his reported destination.

Kitchen maintains that, on the date of the incident, as he passed over Brownwood on the way to Abilene—he visually confirmed that visibility conditions

3

were acceptable. He then landed in Brownwood. Kitchen also offered testimony from Bobby Burks, the airport manager at Brownwood Regional Airport. Although his memory differed from the National Weather Service records, when shown the records for the date and time of Kitchen's flight, Burks agreed that it showed 0.2 miles visibility.

Kitchen admitted that, when he landed the plane in Brownwood, he was in violation of FAA regulations, which specify that IFR landings are permitted based on the weather report, rather than a pilot's personal assessment of the conditions. *See* 14 C.F.R. § 135.225(a). Several hours after the landing, Baron transmitted a letter to Kitchen stating that his employment was terminated as a result of his failure to comply with IFR landing minimums. Kitchen and Baron agree that no one at Baron stated that he was fired as a result of his age. And in our review of the record, Kitchen alleged no implied or indirect statement to that effect. But in its charge, the trial court instructed the jury that if it did not believe the reason that Baron gave for discharging Kitchen, it could infer that Baron's motivation for terminating Kitchen was his age. The jury then returned a verdict in which it found that age was a motivating factor in Baron's decision to discharge Kitchen and awarded a total of $500,000 in back pay and compensatory damages to Kitchen.

*Baron's Factual Sufficiency Challenge*

In its first issue on appeal, Baron argues that the evidence is factually insufficient to support the jury's verdict that age was a motivating factor in the decision to terminate Kitchen. However, Baron has failed to preserve the issue of factual sufficiency for review. A complaint regarding the factual insufficiency of the evidence to support a jury finding must be raised in a motion for new trial. TEX. R. CIV. P. 324(b)(2); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *see also Interest of D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021). Furthermore, to preserve a

4

complaint for review, a party must state the specific grounds on which it objects and obtain a ruling. *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999); *Basic Energy Serv., Inc. v. D-S-B Properties, Inc.*, 367 S.W.3d 254, 263 (Tex. App.—Tyler 2011, no pet.) ("To preserve issues of legal and factual insufficiency, an appellant is required to adequately apprise the trial court of the alleged deficiencies in such a way that its objection can be clearly identified and understood."). A general objection does not preserve an issue for review. *See In re C.E.M.*, 64 S.W.3d 425, 427 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (rejecting motion for instructed verdict because it did not state the specific grounds on which relief was sought).

Baron filed a motion for new trial that complained about the factual sufficiency of the evidence. However, the motion does not spell out Baron's specific objections, stating only that "a new trial is warranted because the evidence was factually insufficient to support the verdict." This language is insufficient to apprise the trial court of the basis of Baron's complaint. *Id.*

Baron's motion for new trial also stated that it is incorporating the arguments made in its motion for judgment notwithstanding the verdict into the motion for new trial. However, consistent with Texas law, the motion for judgment notwithstanding the verdict asserted challenges to the *legal* sufficiency of the evidence, not the factual sufficiency.[1] *See, e.g.*, *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (applying legal sufficiency standard to motion for judgment notwithstanding the verdict). As such, merely referencing a motion for judgment

---

[1]Baron filed two motions for judgment notwithstanding the verdict: its original motion and a supplemental motion. The motion for new trial is unclear as to whether it attempts to incorporate one or both of those motions. We have assumed that only the original motion was incorporated, but the supplemental motion likewise does not raise any issues relating to the factual sufficiency of the evidence.

notwithstanding the verdict is not sufficient to preserve error on a complaint of factual sufficiency.

Because Baron has failed to preserve the issue for appeal, we do not consider whether the evidence was factually sufficient to support the verdict.

*Baron's Legal Sufficiency Challenge*

In its first issue, Baron's also asserts that the evidence is legally insufficient to support the jury's verdict that age was a motivating factor in Baron's decision to terminate Kitchen. The issue of legal sufficiency was adequately preserved in Baron's motion for judgment notwithstanding the verdict. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)).

A. *Standard of Review*

To analyze a no-evidence or legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. "Anything more than a mere scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). However, "if the evidence is so weak that it only creates a mere surmise or suspicion," then that is legally equivalent to "no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

6

Kitchen asserted a claim against Baron based on the Texas Commission on Human Rights Act (TCHRA), which provides that an employer may not discharge an individual because of age. TEX. LAB. CODE ANN. § 21.051 (West 2021). When it enacted the TCHRA, the legislature "intended to correlate state law with federal law in employment discrimination cases." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). As such, Texas courts look to federal law to interpret its provisions. *Id.*; *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canchola*, 121 S.W.3d at 739 (citing *McDonnell Douglas* and *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142–43 (2000)). However, once a discrimination case has been tried on the merits, Texas courts do not utilize a burden-shifting analysis. *Canchola*, 121 S.W.3d at 739; *Dell, Inc. v. Wise*, 424 S.W.3d 100, 109 (Tex. App.—Eastland 2013, no pet.). "Instead, we inquire whether the evidence is legally sufficient to support the jury's ultimate finding." *Canchola*, 121 S.W.3d at 739 (citing *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 180–81 (5th Cir. 1999)).

To establish a violation of the TCHRA, a plaintiff must show that he or she was (1) a member of a protected class, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class, such that age was a motivating factor in the decision to terminate the employee. *AutoZone*, 272 S.W.3d at 592; *Canchola*, 121 S.W.3d at 739; *see also Tex. Dep't of Transp. v. Flores*, 576 S.W.3d 782, 790 (Tex. App.—El Paso 2019, pet. denied).

In this case, the first three elements are not in dispute. At the time of termination, Kitchen was sixty-one years old, which is well within a protected class of persons over forty. *See* LAB. § 21.101 (discrimination on the basis of age applies to "discrimination against an individual 40 years of age or older"). Likewise, Baron does not dispute that Kitchen—an experienced pilot—was qualified for his employment or that he was terminated. Instead, Baron's argument is focused on the question of whether age was a motivating factor in its decision to terminate Kitchen.

In support of this argument, Kitchen offered no direct evidence of discriminatory intent on the part of Baron. This is not unusual. Establishing a claim of discrimination through direct evidence can be difficult because "motives are often more covert than overt, making direct evidence of forbidden animus hard to come by." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983)); *see also Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). As such, plaintiffs are permitted to prove discrimination through circumstantial evidence which demonstrates that the employer's stated reason for termination was pretextual. *McDonnell Douglas*, 411 U.S. at 802; *Flores*, 612 S.W.3d at 305. Such pretext can be established through evidence of disparate treatment or by showing that the reason for his termination is "false or unworthy of credence." *Rodriguez v. City of Poteet*, No. 04-13-00274-CV, 2014 WL 769286, at *6 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)); *see also Tex. Health & Human Servs. v. Sepulveda*, 668 S.W.3d 856, 864 (Tex. App.—El Paso 2023, no pet.).

*The "Replacement" Evidence*

Kitchen introduced evidence at trial which purported to show that he was replaced by a younger pilot. Baron maintains that, even if the evidence supported

such facts, it is not sufficient to support a finding of age discrimination unless Kitchen also proves that the younger employee was "clearly less qualified." *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019). In response, Kitchen argues that *McMichael* does not apply because, unlike this case, *McMichael* is a workforce reduction case. Kitchen argues that his "replacement" evidence instead challenges the "legitimacy and credibility of Baron's purported reason for terminating Kitchen."

We conclude that the "replacement" evidence is best viewed as a component of Kitchen's claim for pretext, rather than an independent basis for establishing discrimination. Under the *McDonnell Douglas* burden-shifting analysis, an employee is initially required to establish a prima facie case for discrimination. 411 U.S. at 802. The burden of establishing such a case can be satisfied by showing that the employee was "replaced by someone younger." *Garcia*, 372 S.W.3d at 642. At later stages in the analysis, evidence of falsity can be combined with evidence from the prima facie case to establish discrimination based on pretext. *See, e.g.*, *Reeves*, 530 U.S. at 148. As such, Kitchen's evidence of replacement is relevant to his argument that Baron acted pretextually, but it is not independently dispositive of the issue.

Although it is not independently dispositive, we also conclude that Kitchen has introduced more than a scintilla of evidence that he was replaced by a younger employee.

Kitchen offered evidence that, following his own termination, no other Barron pilots were terminated, and no other pilots resigned, prior to February 19, 2016. During that timeframe, the next pilot that was hired was twenty years younger than Kitchen. Thereafter, of the next four pilots that were hired, three were between nineteen and twenty-seven years younger, and only one was older than Kitchen.

9

In response, Baron asserts that Kitchen was not merely a pilot, but a "floater" pilot, tasked with handling an assortment of different routes. Baron then argues that the record is void of any indication as to when, if at all, the next floater pilot was hired. However, a report that Baron produced in this case containing a list of its employees does not describe Kitchen as a "floater pilot," but merely as a "pilot." Likewise, none of the other pilots on the list are distinguished as "floaters" versus specific route-based pilots. Baron also offered a chart into evidence that contains its organizational hierarchy. The chart reflects that a chief pilot is responsible for forty-seven other pilots. It does not distinguish between the pilots based on floater status, assigned regions, assigned routes, or other characteristics.

In the federal courts, employers are not "allowed to get around Title VII [of the Civil Rights Act of 1991] by fractionating an employee's job." *Wallace v. SMC Pneumatics, Inc*., 103 F.3d 1394, 1397 (7th Cir. 1997) (employer claimed that responsibilities of plaintiff had been reassigned to six different individuals, and that there was therefore no "replacement"). Likewise, employers cannot avoid the *McDonnel Douglas* test by obscuring the manner in which an employee's responsibilities have been reallocated. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir. 1994) (employer claimed it had eliminated position that involved producing newsletters, but evidence showed that such newsletters were later replaced by different, but similar publications). In that regard, and particularly instructive, is the holding of the United States Court of Appeals for the Third Circuit in *Kachmar v. SunGard Data Sys., Inc*., 109 F.3d 173, 183 (3d Cir. 1997). In *Kachmar*, the Third Circuit remanded a case to the lower court for consideration of whether the employer had engaged in a ruse by formally assigning a job title to a female, while transferring most of plaintiff's responsibilities to a male. 109 F.3d at 183. In connection with the remand, the court noted that

10

"replacement," for purposes of Title VII, does not mean that every detail of the duties that an employee performed needs to be compared to those performed by the new employee. *Id.* Rather, it is "only natural that duties shift with new personnel, as they bring to the position varied skills and expertise that may differ from those of the prior occupant." *Id.*

When Baron insists that Kitchen identify the next pilot that was designated as a "floater," it conflates the concept of Kitchen's position with his more particular, assigned responsibilities. We believe that courts should guard against excessive fractionation and subdivision when identifying replacement employees. Among other things, such a practice will often make it difficult, if not impossible, to identify a "replacement" under the *McDonnel Douglas* rubric. Accordingly, we conclude that, where four of the next five pilots that were hired were at least nineteen years younger than Kitchen, there is more than a scintilla of evidence that Kitchen was replaced by a younger pilot.

*Disparate Treatment*

To support a claim for disparate treatment, Kitchen must demonstrate that he was treated differently from other, similarly situated younger employees. *See AutoZone*, 272 S.W.3d at 594. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta*, 177 S.W.3d at 917. "[P]recise equivalence in culpability between employees is not the ultimate question." *McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 283 n.11 (1976); *Ysleta*, 177 S.W.3d at 917–18. However, the evidence must usually show that the misconduct resulting in discharge was "nearly identical" to the conduct of the employee that was retained. *Ysleta*, 177 S.W.3d at 918 (quoting *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)). "To prove discrimination based on disparate discipline, the

misconduct of both disciplined and undisciplined employees 'must be of comparable seriousness.'" *Dell, Inc. v. Wise*, 424 S.W.3d 100, 110 (Tex. App.—Eastland 2013, no pet.) (quoting *Autozone*, 272 S.W.3d at 594).

In support of his argument for disparate treatment, Kitchen points to Baron's handling of safety-related incidents involving two other pilots: Joe Pupsta and Steve Prochaska. Although Pupsta and Prochaska are ten and nineteen years younger than Kitchen, respectively, they are not similarly situated.

In 2009, the FAA suspended Pupsta's license for sixty days. At the time, Pupsta's supervisor was Stephen Keith Mason, who was the Chief Pilot. Mason would later be replaced by Shawn Collins, who was Kitchen's supervisor in December 2015. Pupsta's suspension was based on his failure to follow air traffic control (ATC) instructions that required him to maintain altitude while he was in the vicinity of another aircraft. As a result, he created "loss of separation" between the two aircraft. Pupsta was not fired for the violation, although he later resigned.

Pupsta was not similarly situated to Kitchen. His incident occurred more than five years earlier, and it involved a different supervisor and the violation of a different FAA regulation. Additionally, there was testimony from Zimmerman that Kitchen's conduct created a higher safety risk than Pupsta's. Under these circumstances, there is no similarity between the standards, supervisors, or conduct of Kitchen and Pupsta. *See Ysleta*, 177 S.W.3d at 917.

On December 15, 2015, approximately two weeks after the landing incident involving Kitchen, Prochaska took off in icy weather conditions and crashed when he landed. There is no indication that Prochaska was in violation of FAA regulations. At the time of the incident, Prochaska was a new pilot, and Baron responded to the situation by providing him with intensive retraining. However, Baron eventually decided that Prochaska would need to be fired because "he could

12

not safely fly the airplane," and Prochaska resigned before his employment was terminated.

Like Pupsta, Prochaska was not similarly situated to Kitchen. He was never accused of violating an FAA regulation, and he was a relatively inexperienced pilot, for whom retraining showed some promise. But, the termination of Prochaska was ultimately, though indirectly, effected. Kitchen, on the other hand, was an experienced pilot who clearly understood the FAA safety regulations, and then willfully violated the IFRs governing takeoff and landings in reported conditions of low visibility.

Because the incidents involving Pupsta and Prochaska were not "nearly identical" to that of Kitchen, we hold that Kitchen's evidence of disparate treatment was insufficient as a matter of law. *See AutoZone*, 272 S.W.3d at 594–95 (evidence was legally insufficient to support a jury finding of age discrimination when employees who were subject to less stringent disciplinary action were not similarly situated).

### *Falsity*

In evaluating whether Baron's stated reason for discharge was false, our inquiry is not whether Baron's reason for termination was incorrect. *See Laxton*, 333 F.3d at 579 (inquiry was not whether employer's proffered reason "was an *incorrect* reason for . . . discharge") (emphasis in original). Rather, the inquiry is whether Baron's proffered explanation was the actual reason for Kitchen's termination. *See id.* In this regard, "[o]ur concern is whether the evidence supports an inference that [the employer] intentionally discriminated against [the employee], an inference that can be drawn if its proffered reason was not the real reason for discharge." *Id.*

Thus, it is important to be mindful that, at the time of discharge, Baron's stated reason for terminating Kitchen was his violation of the IFRs governing an instrument landing when the reported visibility conditions are below the destination minimums. *See* 14 C.F.R. § 135.225(a). As such, the relevant inquiry is whether Baron's proffered explanation was the actual reason for Kitchen's discharge. *Laxton*, 333 F.3d at 579; *Canchola*, 121 S.W.3d at 740. Additionally, if it was not the actual reason for discharge, Kitchen must show that it was a pretext for discrimination. *Canchola*, 121 S.W.3d at 740.

Kitchen maintains that the verdict is supported by evidence of falsity on three grounds. First, Kitchen maintains that Baron took no disciplinary action against other pilots that had landed in Brownwood while the AWOS was malfunctioning. However, Kitchen's evidence in this regard suggests the beginnings of a claim for disparate treatment, *see AutoZone*, 272 S.W.3d at 594, a claim that must ordinarily point to specific examples and demonstrate a similarity of circumstance to support a verdict. *See, e.g.*, *Ysleta*, 177 S.W.3d at 918.

We conclude that Kitchen cannot avoid a showing of similarity of circumstance under the disparate treatment standard by recharacterizing purported evidence of disparate treatment as evidence of falsity. To be sure, there is some overlap between the two categories of proof. The aim of both is to establish that the employer's reason for termination was "pretextual." *See Laxton*, 333 F.3d at 578. However, we believe that Texas courts, as well as the federal courts, require proof of similarity of circumstances, among other reasons, for the very situation that confronts us in this case: to avoid a broad allegation that other employees were treated differently without any accompanying particularities or additional evidence. *See, e.g.*, *Autozone*, 272 S.W.3d at 594 (requiring situations and conduct of the employees to be "nearly identical"); *see also Okoye v. Univ. of Tex. Houston Health*

14

*Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (same).  This form of "proof" evades the critical scrutiny of a case-by-case comparison.[2]  *See, e.g.*, *Smith*, 891 F.2d at 1180 (rejecting comparison because employees violated different policies).  As such, we conclude that Kitchen's broadly phrased testimony that Baron employees were allowed to land in Brownwood while the AWOS was malfunctioning fails to create a scintilla of evidence that Baron's stated reason for termination was false.

As a second basis for support of the jury verdict through proof of falsity, Kitchen points to evidence that—over time—Baron stated reasons for Kitchen's termination that were not mentioned in the letter of December 1.  Kitchen argues that Baron thereby offered "shifting reasons" for his termination, and that such "shifting" is evidence of falsity.  The evidence showed that, in addition to its originally stated reason for termination (that Kitchen had landed in Brownwood when such a landing was prohibited under the IFRs), Baron later indicated on various occasions that its decision was influenced by: (1) Kitchen's violation of IFRs prohibiting takeoff while visibility conditions are poor at the destination, and (2) a previous disciplinary action that it had taken against Kitchen in 2011.[3]  Kitchen argues that such "shifting" explanations are sufficient to support a claim of falsity

---

[2]Kitchen also testified that he had been instructed to land in Brownwood when Baron knew that the AWOS was not working.  Again, however, such testimony was lacking in any particulars, such as dates on which such instructions were given, the actual weather conditions, the contents of the reports that were being generated by the AWOS, and whether the AWOS was believed to be malfunctioning at the alleged time and date of landing.

[3]Kitchen also complains that, at trial, Baron gave a third reason: that the termination was a result of failing to follow "company policy" regarding takeoffs where weather conditions are adverse.  However, while Baron questioned Zimmerman and Kitchens regarding the violations of company policy, thereby introducing evidence of other motivating factors for Kitchen's termination, we can find no indication that Baron made such a claim as one of the original reasons for his termination.

Kitchen offered evidence that, prior to takeoff, he had designated Abilene as an alternative destination.  When Zimmerman was asked a hypothetical question that assumed the truth of Kitchen's evidence regarding an alternate destination, he testified that taking off even under those conditions was not consistent with company policy.  However, he did not state that violation of "company policy" was one of the original reasons for the termination.

under *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc*., 482 F.3d 408 (5th Cir. 2007) and *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002).

In *Burrell*, the evidence showed that an employer had, over time, given three distinctive explanations for a hiring decision that rejected the plaintiff for a promotion. 482 F.3d at 415. The United States Court of Appeals for the Fifth Circuit held that, based on such proof, a reasonable jury could conclude that the stated reason for the hiring decision was pretextual. *Id.*

In *Gee*, an individual responsible for making a hiring decision had at first denied consulting with anyone else regarding the decision, and then later admitted that he had conferred with several people before doing so. 289 F.3d at 347–48. There was also evidence that the same person was initially evasive when asked about the reason for the hiring decision, and that the eventual explanation was inconsistent with previous performance evaluations. *Id.* at 348.

Under *Burrell* and *Gee*, a jury may infer that an employer's explanation for taking an adverse action is false when the employer abandons its original justification, providing different and inconsistent explanations over time. *Burrell*, 482 F.3d at 415; *Gee*, 289 F.3d at 347–48. That scenario is not present in this case. Baron has never abandoned the original reason that it gave for firing Kitchen: landing his plane in Brownwood in violation of the IFRs. While its explanations over time included additional motivating factors for Kitchen's termination at the time of the termination, they do not "shift" Baron's explanation of the actual reason for the termination. Baron's explanations at the time of the incident, before trial, and at the time of trial were consistently directed toward Kitchen's decision to travel to and land his plane in Brownwood in the face of an adverse weather report. As such, we conclude that evidence of Baron's subsequent elaborations on its reasons

16

for discharge and/or its explanation of other motivating factors is not legally sufficient to support the verdict on the grounds of falsity.

The facts of this case bear a strong similarity to those in *Johnson*. In *Johnson*, a pilot who flew patrol routes for a pipeline company (Barr) was terminated after several complaints were lodged against him, including complaints of a safety violation that involved making an improper 360 degree turn. *Johnson v. Barr Air Patrol, L.L.C.*, No. 3:07-CV-1444-O, 2009 WL 854807, at *1 (N.D. Tex. March 31, 2009). The employer introduced evidence of legitimate reasons for termination, which included alleged "FAA violations" during one particular flight. *Id.* at *5–6. In response, the pilot alleged that the reasons for termination were pretextual because, even though his conduct reflected a valid safety concern, it was not a violation of any FAA rules. *Id.* at *7. In assessing the pilot's evidence, the court stated the following:

> Plaintiff has not presented evidence showing that the [safety] incident is a false reason for termination; he has merely presented evidence showing that his deviation from the 360 turn was inaccurately labeled as an FAA violation on Barr forms. Barr's articulated reason is poor job performance, not violation of any FAA rule or standard, and Plaintiff does not dispute that his 360 degree turn was a safety issue. Accordingly, the Court does not find that Barr's mislabeling of Plaintiff's undisputed safety violation as an FAA violation raises a genuine issue of material fact that Barr's articulated non-discriminatory reasons are false.

*Id.* at *7. In this case, as in *Johnson*, the employer's description of the conduct that led to termination was always consistent, and minor or inconsequential variations or additions in the description of its reasoning as a part of the termination decision are an insufficient basis for inferring falsity.

As a final basis for upholding the verdict on the grounds of falsity, Kitchen points to Baron's failure to produce documentary evidence that his December 1

17

flight plan showed Brownwood as his destination. However, it was Kitchen that carried the burden of proof to show that Baron's reasons for termination were pretextual. *See McDonnell Douglas*, 411 U.S. at 804. If he thought that the contents of the flight plan were important to the resolution of the parties' dispute over its contents, it was his responsibility to offer his December 1 flight plan into evidence in support of his claim of falsity.

In any event, the contents of the flight plan are ultimately of limited relevance. Although such a document would address a dispute over Kitchen's violation of the IFR governing *takeoffs*, it does not bear any relevance to the *landing* violation, the circumstances of which are undisputed. *See* 14 C.F.R. § 135.219, 135.225. Furthermore, the absence of documentary evidence of the flight plan does not constitute proof of pretext.

We hold that Kitchen failed to produce more than a scintilla of evidence that Baron's stated reason for discharge was pretextual. Accordingly, we sustain Baron's first issue on that basis.

*The Trial Court's Instruction*

We have concluded above that the evidence was legally insufficient to support a finding of falsity. However, even if we assume that there was more than a scintilla of evidence to support that finding, we also conclude that the verdict was likely erroneous as a result of an instruction in the trial court's charge. In its second issue, Baron argues that the trial court erred when it overruled Baron's objection(s) to the trial court's charge and instructed the jury as follows:

> If you do not believe the reason Baron Aviation Services, Inc. has given for discharging Larry Kitchen, you may, but are not required to, infer that Baron Aviation Services, Inc. was motivated by Larry Kitchen's age.

18

Baron maintains that this instruction is erroneous, that it is an incorrect statement of the law, and that it undermines the need for evidentiary support of age discrimination.

The record suggests that the jury was confused by the instruction. After it retired to deliberate, the jury sent a note to the trial court which indicated that it needed "clarification" relating to the instruction. The trial court responded as follows: "You have all the law and evidence. I refer you back to the Court's Charge."

Because Baron provided a legitimate, non-discriminatory reason for termination, Kitchen was required to establish by a preponderance of the evidence that Baron's stated reason was pretextual, and that age was the true motivating factor for his termination. *See McDonnell Douglas*, 411 U.S. at 804. We are concerned that the instruction as stated above appears to abrogate Kitchen's burden of presenting proof of age discrimination as a motivating factor for his termination, and that it instead requires only that the jury disbelieve the reason for termination.[4]

The trial court's instruction mirrors Texas Pattern Jury Charge (PJC) 107.6. Comm. on Pattern Jury Charges, State Bar of Texas, *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 107.6 (2020) (Question and Instruction on Unlawful Employment Practices). Although heavily relied upon by the bench and bar, the PJC is not the law. *See THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 569 (Tex. App. —Amarillo [Panel Op.] 2010, pet. denied) (citing *H.E. Butt Co. v. Bilotto*, 928 S.W.2d 197, 199 (Tex. App. —San Antonio 1996), *aff'd*, 985 S.W.2d 22 (Tex. 1998)). It is what a State Bar Committee

---

[4]The jury could not have disbelieved that Kitchen violated the FAA safety regulation because that fact was admitted by Kitchen and therefore uncontroverted. Furthermore, as we have previously concluded in this opinion, Kitchen failed to produce more than a scintilla of evidence that Baron's stated reason for termination was pretextual. It is under this fact situation that we must critically examine the trial court's instruction.

perceived the law to be when the proposed charge therein was issued. *Id.* The law has continued to evolve since PJC 107.6 was first proposed. PJC 107.6 is commonly referred to as a "permissive pretext only" instruction because it permits, but does not require, the jury to infer discrimination from evidence of pretext. *See Ratliff v. City of Gainesville, Tex.*, 256 F.3d 355, 360–61 (5th Cir. 2001). By contrast, a "permissive pretext plus" instruction permits an inference of discrimination only where the plaintiff has offered additional evidence of discrimination. *Id.* at 361.

Questions regarding the propriety of a permissive pretext instruction commonly relate back to the United States Supreme Court's opinion in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). *See, e.g.*, *Ratliff*, 256 F.3d at 360 (parties and court relying on *Reeves* for analysis of court's pretext instruction). *Reeves* did not involve a dispute over the wording of a permissive pretext instruction. However, it did address the question of the circumstances under which a jury may infer discrimination based on evidence that the employer's explanation for its actions was false.

In *Reeves*, the Fifth Circuit determined that, although there was some evidence that the employer had acted pretextually, the plaintiff was required to provide additional evidence that age was the reason for his discharge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F.3d 688, 693 (5th Cir. 1999), *rev'd*, 530 U.S. 133, (2000) ("We must, as an essential final step, determine whether Reeves presented sufficient evidence that his age motivated Sanderson's employment decision."). In reviewing the Fifth Circuit's decision, the Supreme Court held that, in finding no additional evidence of age discrimination, the Fifth Circuit had ignored the evidence in the plaintiff's prima facie case, which showed that the employer had hired three people, all substantially younger than the plaintiff, to fill the plaintiff's position. 530 U.S. at 142, 146. In ignoring such evidence, the Fifth Circuit had wrongly

20

"proceeded from the assumption that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law." *Id.* at 146. Rather, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added).

A few months after *Reeves* was handed down, the Fifth Circuit issued its opinion in *Ratliff*, another age discrimination case. In *Ratliff*, the trial court instructed the jury as follows:

> If you find that the [employer] has articulated nondiscriminatory reasons for not hiring [plaintiff], then you must find for [the employer]. However, if [plaintiff] can show that the articulated reasons given by [the employer] are (1) false, and (2) a determining or motivating factor for his non-hire was his age, then you may find for [plaintiff].

256 F.3d at 359. The Fifth Circuit found that the district court had erred because the instruction "failed to conform to *Reeves*," noting that, under *Reeves*, "evidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination." 256 F.3d at 362 (quoting *Evans v. City of Bishop*, 238 F.3d 586, 592 (5th Cir. 2000)). Additionally, it found that the trial court had erred in failing to provide a permissive-pretext only instruction. 256 F.3d at 364.

Although *Ratliff* stands as precedent in the Fifth Circuit, its wisdom was called into question by another Fifth Circuit panel in *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004). In that case, the panel stated that it would not overturn *Ratliff* based on the Fifth Circuit's rule that one panel may not overrule the decisions of another panel. 363 F.3d at 574. However, it went on to express concern that *Ratliff* may have unnecessarily expanded on the scope of *Reeves*. *Id.* Among other things, it stated that *Ratliff* may have been overly reliant on the *McDonnell Douglas* burden shifting framework, which it said was a more appropriate tool when

assessing directed verdicts and summary judgments. 363 F.3d at 574–75. Additionally, it noted that *Reeves* did not change the requirement that a factfinder must rely on evidence of intentional discrimination, and that *Ratliff* should not have thereby altered the instructions that district courts give to juries. *Id.* at 575–76. It is also notable that the pattern jury instructions created by a committee of district judges in the Fifth Circuit *now* includes an instruction that reads as follows:

> If you find that Defendant [name]'s stated reason for its [specify tangible employment action] is not the real reason but is a pretext *for age discrimination*, you may, but are not required to, find that Defendant [name] would not have decided to [specify tangible employment action] Plaintiff [name] but for [his/her] age.

*Pattern Jury Instructions of the Dist. Judges Ass'n of the Fifth Circuit, Civil Cases* § 11.15(B) (2020), https://www.lb5.uscourts.gov/viewer/?/juryinstructions/fifth/2020civil.pdf (last visited Oct. 27, 2023) (emphasis added). The federal district judge committee includes a footnote to this instruction which cites *Ratliff*, suggesting that it believes the instruction is consistent with the ruling therein. *Id.*

In Texas, two other courts of appeals have addressed the question of whether a permissive-pretext instruction is *required* in discrimination cases, and both have answered in the negative. *Johnson v. Nat'l Oilwell Varco, LP*, 574 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[T]he United States Supreme Court's analysis in *Reeves* does not mandate or suggest that a permissive-pretext instruction should be given."); *Collie v. IBEX Staffing Sols., Inc.*, No. 04-14-00269-CV, 2015 WL 1094825, at *4 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.) ("[T]he trial court did not abuse its discretion in refusing Collie's permissive-pretext instruction.").

Additionally, one Texas court has considered an issue that involves the wording of a permissive-pretext instruction, although the instruction was not the one that is described in PJC 107.6. In *Flores*, the trial court instructed the jury that

22

"[p]roof by a preponderance of the evidence that an employer's stated reason . . . is false is *ordinarily* sufficient to permit you to find that the employer was actually motivated by discrimination." 576 S.W.3d at 796 (emphasis added). The El Paso Court of Appeals found that this instruction was similar to language used by the Texas Supreme Court in *Quantum Chem. Corp. v. Toennies*, and that the trial court's instruction was therefore not erroneous. 576 S.W.3d at 797 (citing *Toennies*, 47 S.W.3d 473, 481 (Tex. 2001)).

A review of the briefing in this case might lead one to believe that, particularly in the federal courts, there is a conflict regarding the circumstances under which a factfinder might infer discrimination from evidence of falsity. We do not believe that to be the case. Indeed, in the post-*Reeves* era, courts have been remarkably consistent in the way they handle this issue. *See, e.g.*, *Reeves*, 530 U.S. at 147; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Canchola*, 121 S.W.3d at 740; *Toennies*, 47 S.W.3d at 477. It is important, however, to clarify some confusion that may arise out of a common formulation that describes the permissive-pretext standard.

The court's opinion in *Reeves* indicates that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147. This language was quoted in *Ratliff* and has also been mirrored by other federal circuits, as well as Texas courts. *Ratliff*, 256 F.3d at 360; *see also, e.g.*, *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152–53 (2d Cir. 2014); *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008); *Inskeep v. Ch20 Inc.*, 19 Fed. App'x 600, 601–02 (9th Cir. 2001); *Dammen v. UniMed Med. Ctr.*, 236 F.3d 978, 980 (8th Cir. 2001); *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000); *Hudgens v. Univ. of Tex. MD Anderson Cancer Ctr.*, 615 S.W.3d 634, 652 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (Poissant, J., concurring and dissenting);

*Waldmiller v. Cont'l Exp., Inc.*, 74 S.W.3d 116, 121 (Tex. App.—Texarkana 2002, no pet.). Similarly, the Texas Supreme Court has stated that proof of pretext "is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination." *Toennies*, 47 S.W.3d at 481–82. This court and other courts of appeals have likewise mirrored the supreme court's language in *Toennies*. *Dell*, 424 S.W.3d at 112 (quoting *Toennies*); *see also Little v. Tex. Dep't of Crim. Just.*, 177 S.W.3d 624, 632 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Flores*, 576 S.W.3d at 797.

When viewed in isolation, the oft-quoted statements from *Reeves* and *Toennies* can be misleading. To fully understand these statements, they must be viewed in the context of the *McDonnell Douglas* framework, on which each of these cases rely. *See Reeves*, 530 U.S. at 137 (addressing whether judgment as a matter of law was appropriate); *Toennies*, 47 S.W.3d at 481–82 (evaluating legal sufficiency of evidence). As the panel in *Kanida* observed, *McDonnell Douglas* is best utilized in contexts involving the evaluation of the legal sufficiency of the evidence, such as summary judgments or directed verdicts, and the use of *McDonnell Douglas* in the context of assessing a proper jury instruction can quickly lead to error. *See* 363 F.3d at 574–75.

Viewing "pretext is sufficient" language within the framework of its assessment of evidentiary sufficiency is critical because such language assumes, under the *McDonnell Douglas* rubric, that—at the point where a plaintiff seeks to introduce evidence of pretext—the plaintiff has *already* offered some evidence of discrimination in the form of its prima facie case. That is, neither *Reeves* nor *Toennies* stand for the proposition that when it is convinced of the falsity of the employer's reason for discharge, a jury can, on that basis *alone*, make a finding of discrimination. Rather, a jury may infer discrimination only when it determines that

24

proof of falsity, along with other evidence (*e.g.*, evidence drawn from the employee's prima facie case in a *McDonnell Douglas* scenario) is strong enough to make such an inference. *Reeves*, 530 U.S. at 147; *Toennies*, 47 S.W.3d at 477 (discussing *McDonnell Douglas* framework). As the Texas Supreme Court stated in *Canchola*, to establish pretext, the plaintiff "must show that the reason proffered by [the employer] is 'false, *and* that discrimination was the real reason.'" 121 S.W.3d at 740 (quoting *St. Mary's*, 509 U.S. at 515) (emphasis in original); *see also Reeves*, 530 U.S. at 147 ("In other words, 'it is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'") (quoting *St. Mary's*, 509 U.S. at 519); *St Mary's*, 509 U.S. at 524 (Even if "the employer's proffered reason is unpersuasive, or even obviously contrived," such facts do not necessary establish that the "plaintiff's proffered reason . . . is correct."); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 490 (5th Cir. 2004) (although there was evidence of selective investigation and termination, jury verdict in favor of employee should have been overturned because employee presented "no evidence that independently suggests that [his employer] falsely and selectively fired him *because* he engaged in protected activity") (emphasis in original).

In short, although discrimination cases may involve facts from which it can readily be inferred that the employer was motivated by discrimination after credible evidence of pretext is introduced, evidence of falsity is not—standing alone— sufficient to support an inference of discrimination. *See Canchola*, 121 S.W.3d at 740. The jury must also rely on credible evidence that affirmatively demonstrates the employer's true purpose for the discharge, even if such evidence is circumstantial. *See id.* ("The relevant inquiry is not whether [the reasons for discharge] were a pretext, but what they were a pretext *for*.") (emphasis in original).

25

By contrast, the trial court's instruction in this case informs the jury that it may infer discrimination on the sole basis of its disbelief regarding the reason that the employer gave for discharging Kitchens. It does not indicate that the jury should be convinced that the false reason for discharge was also a pretext for discrimination. Such an inference is improper under *Reeves*, *St. Mary's*, and *Canchola*. Indeed, post-*Ratliff*, the District Judges Association for the Fifth Circuit recommended that juries be informed that the employer's false statements relating to discharge must be "a pretext for age discrimination." PJC § 11.15(B). In this case, Kitchen admitted to the act or omission given by Baron as a reason for his termination: the willful violation of an FAA safety rule.

As a practical matter, there can be a fine line between a jury disbelieving an employer's reason for termination, and a jury's belief that the stated reason for termination was unreasonable. An at-will employer does not incur liability for carelessly forming its reasons for termination. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 609 (Tex. 2002); *Garcia v. Allen*, 28 S.W.3d 587, 591 (Tex. App.—Corpus Christi-Edinburg 2000, pet. denied). As long as its reason for terminating Kitchen was not illegal, Baron could have fired Kitchen, an at-will employee, for his admitted FAA violation, for any other reason (even if negligently determined), or for no reason at all. *See Canchola*, 121 S.W.3d at 740; *Sawyer v. E.I. Du Pont De Nemours and Co.*, 430 S.W.3d 396, 400 (Tex. 2014); *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 715 (Tex. 2003); *Sears*, 84 S.W.3d at 609; *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 799 (Tex. App.— Eastland 2005, no pet.) ("The employment-at-will doctrine, generally, absent a specific agreement otherwise, provides that an employer may terminate an employee for good cause, bad cause, or no cause at all."). Indeed, in some cases, a jury might properly conclude that it does not believe the reason for termination precisely

26

because they view it as unreasonable. Nevertheless, it would be improper for a jury to make a finding of discrimination merely because the stated reason for termination is distasteful. We believe that the instruction given in this case increases the risk of such an outcome. *See Reeves*, 530 U.S. at 143 (plaintiff's ultimate burden is to prove intentional discrimination).

Accordingly, after careful consideration, we conclude that, within the context of this jury charge, which does not presume the existence of a prima facie case under the *McDonnell Douglas* framework, PJC 107.6 was fundamentally misleading.

While it was considering the hotly disputed issue of Baron's motives for discharging Kitchen, the jury asked about this very instruction, and the trial court responded to its inquiry by emphasizing that the jury had been given the law. Under the specific circumstances in this case, we believe that the trial court's instruction likely caused the "rendition of an improper judgment." *See Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995); *see also* TEX. R. APP. P. 44.1(a)(1) (no judgment may be reversed on the ground that the trial court made an error of law unless the appellate court concludes that the error "probably caused the rendition of an improper judgment"); *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) ("Charge error is generally considered harmful if it relates to a contested, critical issue.").

Additionally, the trial court's instruction assumes that there is evidence of falsity from which the jury could infer discrimination. As we have concluded, the evidence was insufficient to support a finding of falsity, and the instruction was therefore not supported by the evidence. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) ("An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence.") (quoting *Hawley*, 284 S.W.3d at 855–56). Accordingly, we sustain Baron's second issue.

Our holdings on Baron's first and second issues necessarily dispose of this appeal. As such, we need not address the remaining issues, as raised in Kitchen's cross-appeal. *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We conclude that the evidence was legally insufficient to support a finding that age was a motivating factor in Kitchen's termination. We further conclude that the trial court improperly instructed the jury that it could infer discrimination based solely on evidence of falsity. Accordingly, we reverse the trial court's judgment, and we render judgment in favor of Appellant.

W. BRUCE WILLIAMS

JUSTICE

November 2, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.